IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| PATRICIA R. GILL, | ) | Civil No.: 6:13-cv-01517-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Kathryn Tassinari
Robert A. Baron
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, OR 97401

    Attorneys for Plaintiff


Bill Williams, Acting U.S. Attorney
Adrian Brown, Asst. U.S. Attorney
Janice E. Hebert, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204

FINDINGS AND RECOMMENDATION – 1

      Heather L. Griffith
      Office of the General Counsel
      Social Security Administration
      701 5th Avenue, Suite 2900 M/S 221 A
      Seattle, WA 98104-7075

      Attorneys for Defendants

JELDERKS, Magistrate Judge:

Plaintiff Patricia Gill brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Disability Income Benefits (DIB) under the Social Security Act (the Act). Plaintiff seeks an Order remanding the action to the Social Security Administration (the Agency) for an award of benefits. In the alternative, Plaintiff seeks an Order remanding the action for further proceedings.

For the reasons set out below, the Commissioner's decision should be affirmed.

## Procedural Background

Plaintiff filed an application for a period of disability and disability insurance benefits on September 14, 2007, alleging she had been disabled since November 29, 2002.

After her claim was denied initially and on reconsideration, Plaintiff timely requested an administrative hearing.

On January 5, 2010, a hearing was held before Administrative Law Judge (ALJ) Marilyn Maurer. Plaintiff and Mark McGowan, a Vocational Expert (VE), testified at the hearing.

In a decision dated January 20, 2010, ALJ Maurer found that Plaintiff was not disabled within the meaning of the Act at any time between her alleged onset date through her date last insured. Plaintiff requested review by the Appeals Council, which granted the request, vacated the ALJ's hearing decision and remanded the case for further proceedings.

After remand, a hearing was held before ALJ Maurer on January 31, 2012. Plaintiff and VE Mark McGowan testified at the hearing.

On March 1, 2012, ALJ Maurer issued a decision finding that Plaintiff had not been disabled at any time from her alleged onset date through her date last insured. That decision became the final decision of the Commissioner on October 23, 2013, when the Appeals Council denied Plaintiff's request for review. In the present action, Plaintiff challenges that decision.

**Background**

Plaintiff was born in 1947 and was 64 years old at the time of the ALJ's decision after remand. She has a GED and completed four or more years of college. She has past relevant work as a kitchen supervisor, payroll clerk, receptionist and administrative clerk.

**Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(f).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform

jobs that exist in significant numbers in the national economy. Id.

**ALJ's Decision**

As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2007.

At the first step of her disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset of disability on November 28, 2002, through her date last insured.

At the second step, the ALJ found that Plaintiff's morbid obesity and chronic stasis dermatitis and edema of the right lower extremity were severe impairments.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P., App. 1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC). She found that, through her date last insured, Plaintiff retained the capacity to perform the full range of sedentary work except that

> she was unable to climb ladders/ropes/scaffolds. She could not crawl. She had the ability to kneel, crouch, stoop, and climb ramps/stairs occasionally. She could balance frequently. [Plaintiff] needed to avoid more than occasional exposure to pulmonary irritants, such as dust, fumes, gases, and odors, and she needed to avoid all exposure to workplace hazards, such as unprotected heights and moving machinery that could cause crushing or cutting injuries.

In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her alleged symptoms were less than fully credible.

At the fourth step of her disability analysis, the ALJ found that Plaintiff was capable of performing her past relevant work as a payroll clerk, receptionist, and/or administrative clerk.

In the alternative, at the fifth step, the ALJ further found that Plaintiff had acquired work skills from past relevant work that were transferable to other occupations with jobs that existed in significant numbers in the national economy. She cited payroll clerk as an example of such jobs.

Based upon her conclusion that Plaintiff could perform her past relevant work and other work, the ALJ found that Plaintiff was not under a disability at any time from her alleged onset date through her date last insured.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir.

1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." <u>Andrews</u>, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony; improperly rejected the opinion of treating physician, Dr. Devore; failed to provide the required support for her rejection of lay witness statements and erred in finding that Plaintiff retained the capacity to perform her past work.

## I. **Plaintiff's Credibility**

As noted above, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of her alleged symptoms are less than fully credible . . . ." Tr. 41. Plaintiff contends that the ALJ failed to give clear and convincing reasons for rejecting her testimony.

### A. Standards

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir.1995). If a claimant produces medical evidence of an underlying impairment that is reasonably expected to produce some degree of the symptoms alleged, and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281 (9th Cir.1996); <u>Gregor v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir.2006). If substantial evidence supports the ALJ's credibility determination, that determination must be upheld, even if some of the reasons cited by the ALJ are not correct. <u>Carmickle v. Commissioner of Social Security</u>, 533 F.3d 1155, 1162 (9th Cir.2008).

The ALJ must examine the entire record and consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96–7.

The Commissioner argues that Social Security Ruling (SSR) 96-7p specifies that a "substantial evidence" standard should be applied in reviewing the rationale provided by an ALJ for making a credibility finding. She further argues that it would be "improper" for the court to apply the heightened "clear and convincing" standard set out in Ninth Circuit case law because it differs from the standards specified by the Agency in SSR 96-7p and by Congress in 42 U.S.C. §405(g). I disagree.

Ninth Circuit law on this issue is unequivocal – a clear and convincing standard is to be applied by the District Court in reviewing an ALJ's credibility determinations under the Social Security Act. Smolen, 80 F.3d at 1281; see also Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir.2014)(rejecting the government's suggestion that the court should apply a lesser standard than "clear and convincing). This court declines to ignore or depart from the long and well-established Ninth Circuit case law on this issue.

**B. Plaintiff's Testimony**

In a Disability Function Report dated October 2, 2007, Plaintiff reported that she experienced shortness of breath and sat up in a chair to sleep. She reported pain in her hip and back and numbness in her leg if she rested on her side. She reported the pain and numbness caused her to have to get up and walk around "after a while." Plaintiff wrote that she could pay attention for "a long time" but that she would "drift off to sleep" while watching television,

reading, or playing cards or during conversations. In a Fatigue Questionnaire, also dated October 2, 2007, Plaintiff reported that she required at least two one-hour rest periods or naps during the day.

At her January 5, 2010 hearing before the ALJ, Plaintiff testified that she was unable to perform the duties of her last job because she became stressed easily, was unable to concentrate, and had to move around and elevate her leg above her heart about every half-hour.

Plaintiff testified that the longest she could sit in a chair before needing to stand up was 15 minutes. She could walk on uneven surfaces for about 15 minutes and on even surfaces for about 20 minutes before needing to sit down. She could stand in one position for 15 minutes and could stand for 20 to 25 minutes if she was able to adjust her position. She spent at least four to five intermittent hours a day lying down. When asked by the ALJ how long she had needed to lie down to that extent, Plaintiff responded that it had been since she hurt her leg. The ALJ then asked whether Plaintiff had worked after she had hurt her leg and, if so, had she lain down for four to five hours a day when she was working. Plaintiff confirmed that she had worked for some time after and had lain down at home before and right after work.

At her hearing before the ALJ on January 31, 2012, Plaintiff testified that when she sat down to rest or to do puzzles, read, watch television or eat she did so in a recliner with her feet elevated above her waist. In response to her attorney's questions, Plaintiff also testified that she had been without health insurance for periods of time and that this prevented her from seeking more extensive medical treatment and testing.

**C. Analysis**

Plaintiff here produced evidence of underlying impairments that could reasonably be expected to produce some degree of the symptoms she alleged, and there was no affirmative

evidence of malingering. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's testimony concerning the severity of her symptoms and limitations.

In support of her credibility determination, the ALJ asserted that objective medical findings did not support the degree of limitation alleged by Plaintiff, that Plaintiff failed to comply with her treatment providers' proposed medical regimen, and that inconsistencies in Plaintiff's statements undercut her credibility.

**1. Objective medical findings**

As an example of objective medical findings that did not support Plaintiff's alleged degree of limitation with regard to her right lower leg impairments, the ALJ cited examination notes by consultative examiner Amit Rajguru, M.D., that Plaintiff's neurological examination showed 5/5 strength throughout, as well as intact sensation and active reflexes. The ALJ also noted that Plaintiff's idiopathic edema of the right leg had been unaccompanied by any evidence of blockage or incompetency in the deep veins.

The ALJ noted that cardiologist Michael Menen, MD diagnosed Plaintiff as "morbidly obese" and "deconditioned." However, the ALJ concluded that although such deconditioning can increase fatigue, "[t]here was no objective reason for [Plaintiff] to lie down for two hours a day during usual work hours . . . ."

In other sections of her decision, the ALJ notes that during a visit with her treating provider, James Devore, M.D., Plaintiff's calf was significantly enlarged but there was no localized tenderness. Dr. Devore assessed chronic lymphedema and severe stasis dermatitis of the right lower extremity. He prescribed Lasix and recommended elevation and compression.

During a visit on October 3, 2003, Dr. Devore observed bruising, contusions and hematomas resulting from a fall Plaintiff reported taking on the rocks while fishing at the coast.

The ALJ noted that Plaintiff was then absent from care until June 2005. In a June 3, 2005 visit with Kai Gelphman, M.D., Plaintiff presented with elevated blood pressure and reported that she had been without medication for "quite a while." Dr. Gelphman noted obesity, lymphedema and Plaintiff's reports of depression. In a visit with Dr. Gelphman on October, 28, 2005, Plaintiff reported that her right leg sometimes gave out, sometimes had throbbing pain and became numb with sitting. In chart notes dated May, 12, 2006, Dr. Gelphman listed elephantiasis and malignant obesity among Plaintiff's conditions.

In February, 2006, Plaintiff saw Dr. Michael Joyce for a psychiatric examination. Dr. Joyce described Plaintiff: "[b]right affect, very friendly, great sense of humor . . . very resilient . . . good focus and concentration."

Plaintiff asserts that the ALJ has understated Plaintiff's impairment by noting normal findings and ignoring signs of severe impairment. Plaintiff points to Dr. Rajguru's observations that Plaintiff has "severe 4+ lymphedema of her right leg extending from below the knee all the way down to her foot with chronic stasis dermatitis changes and skin thickening;" that she was tender to palpation over the right leg edema and had a gross limp favoring weight bearing on her left leg. Tr. 363. Plaintiff also cites to clinical observations by Stephanie Potts, F.N.P, that Plaintiff's right leg was "24 in. in diameter, with overriding folds on the ankle and 4+ pitting edema all the way to the base of the toes and all the way to the knee, plus darkening and hemosiderin deposits two-thirds of the way up the leg." Tr. 405.

Defendant asserts that the ALJ correctly noted that despite his findings, Dr. Rajguru opined that, in an eight-hour workday, Plaintiff was capable of sitting for six hours and standing

and walking for two hours and had no postural limitations. Defendant argues that Dr. Rajguru's determination that Plaintiff could complete an eight-hour workday contradicts Plaintiff's testimony that she needed to lie down during the day. Defendant also argues that because deconditioning is not a medical impairment the ALJ reasonably found that there were no objective medical findings to support Plaintiff's alleged need to lie down for two hours a day.

Although an ALJ may not reject a plaintiff's subjective complaints based solely on a lack of medical evidence, it is a factor that an ALJ can consider in her credibility analysis. Burch v. Barnhart, 400 F.3d 676, 680-681 (9th Cir. 2005). Citing Ghanim v. Colvin, 763 F.3d 1154, 1156 (9th Cir. 2014) and Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014), Plaintiff argues that treatment records must be viewed in light of the overall diagnostic record. These cases focus on the overall diagnostic picture of a claimant with mental health issues where the treatment record reflects cycles of improvement and debilitating symptoms. As such, they are more persuasive in addressing Defendant's argument that the ALJ properly found that mental health findings did not support the degree of limitation Plaintiff alleged. However, as Plaintiff herself points out, the ALJ's finding that Plaintiff's depression was not a "severe" impairment is not at issue here. Furthermore, while the medical record does reflect variances in Plaintiff's mood, Plaintiff points to no evidence in the medical record that contradicts Dr. Joyce's notes that Plaintiff had good focus and concentration.

While an ALJ cannot ignore competent evidence in the record, "the ALJ is responsible for determining credibility, resolving conflicts in the medical testimony and resolving ambiguities" and "where the evidence is susceptible to more than one rational interpretation," the court must uphold the Commissioner's decision. Andrews v. Shalala, 53 F.3d at 1039–40.

Here, medical findings fully support Plaintiff's severe impairment of chronic stasis dermatitis and edema of the right lower leg. That diagnosis is reflected throughout the medical record. However, the ALJ reasonably concluded that despite that diagnosis, objective medical findings and treatment notes fail to support the severity of limitation that Plaintiff alleged, particularly with regard to her need to lie down for extensive periods during the day and her ability to concentrate.

**2. Plaintiff's Inconsistent Statements**

The ALJ also cited inconsistencies in Plaintiff's testimony as one reason for concluding that Plaintiff was not wholly credible. The ALJ noted that though Plaintiff testified that she had difficulty paying attention and needed silence to concentrate, in 2007 when she was applying for benefits, she wrote that she could pay attention for "a long time." The ALJ noted that in 2010 Plaintiff testified that she had to lie down at least four or five hours a day, but in completing a Fatigue Questionnaire in October, 2007 she wrote that she needed to lie down an hour at a time, twice per day. The ALJ noted that the 2007 form was completed almost five years after Plaintiff stopped working and "when she had no demands on her time." The ALJ also found inconsistencies in Plaintiff's statements regarding the need to elevate her legs. The ALJ concluded that to the extent Plaintiff's testimony in 2010 and 2012 differed from the information she provided in 2007, which was within two months of her date last insured, the reports made in 2007 were more accurate than when Plaintiff later tried to recall her activities and limitations from more than two years earlier.

The Commissioner does not defend the ALJ's reasoning based on inconsistencies in Plaintiff's statements regarding the need to elevate her legs. The Commissioner also declines to defend the ALJ's reliance on Plaintiff's noncompliance with medical treatment as a basis for her

credibility determination. After a review of the record, I agree that these were not clear and convincing reasons for finding Plaintiff less than wholly credible. However, I conclude that the other reasons provided by the ALJ here were clear and convincing and her credibility determination was supported by substantial evidence in the record. Under these circumstances, the credibility determination should not be set aside. See, e.g., Carmickle, 533 F.3d at 1162 (where supported by substantial evidence, ALJ's credibility determination upheld even if some reasons offered are incorrect).

## II. Rejection of Opinion of Treating Physician Dr. Devore

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting the opinion of her treating physician, Dr. Devore.

### A. Standards

Because treating physicians have a greater opportunity to know and observe their patients, their opinions are given greater weight than the opinions of other physicians. Rodriguez v. Bowen, 876 F.2d 759, 761–62 (9th Cir.1989). An ALJ must provide clear and convincing reasons supported by substantial evidence in the record for rejecting a treating physician's uncontroverted opinions. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir.2007). An ALJ must provide "specific, legitimate reasons ... based upon substantial evidence in the record" for rejecting opinions of a treating physician which are contradicted. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989) (citations omitted).

### B. Analysis

Dr. Devore acted as Plaintiff's primary care provider from 1997 until 2003, with a gap in treatment between August 7, 2001 and December 12, 2002. In treatment notes dated December 12, 2002, Dr. Devore noted "persistent changes in [Plaintiff's] right lower leg with thickening,

discoloration of the skin . . . increasing edema and some calf pain and swelling . . . no obvious infection . . . [and] no localized tenderness." Tr. 346. In notes dated February 25, 2003, Dr. Devore diagnosed Plaintiff with "persistent chronic lymphedema and severe stasis dermatitis of her right lower leg," with chronic edema and thickening. Dr. Devore opined "I do think she is a candidate for total disability on a permanent basis." He recommended ongoing compression and elevation. As noted above, during a visit on October 3, 2003, Dr. Devore observed bruising, contusions and hematomas resulting from a fall Plaintiff reported taking on the rocks while fishing at the coast.

In its remand of a decision denying Plaintiff's application for disability benefits, the Appeals Council instructed the ALJ to give further consideration to Dr. Devore's treatment note that Plaintiff was a candidate for total disability on a permanent basis. In her decision after remand, the ALJ asserted that Dr. Devore's opinion was entitled to "very little weight" because it predated the filing of Plaintiff's application for benefits by more than four years, because he did not treat Plaintiff at any time pertinent to the adjudicatory period and because he offered a "conclusory statement without any objective findings to support his conclusion."

Because Dr. Devore's opinion was contradicted by other medical opinions in the record, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record for its rejection. As noted above, Plaintiff alleges a disability onset date of November 29, 2002 and applied for disability insurance benefits on September 14, 2007. Her date last insured was December 31, 2007. It is apparent, then, that Dr. Devore treated Plaintiff during the relevant adjudicatory period, albeit only in the early stages. The timing of Dr. Devore's treatment of Plaintiff was not a specific and legitimate reason for rejecting his opinion.

FINDINGS AND RECOMMENDATION – 15

In her reply brief, Plaintiff for the first time challenges the ALJ's finding that Dr. Devore's opinion was conclusory and not supported by objective findings. This argument would normally be waived as it was not raised in Plaintiff's opening brief. Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir.1999). In any event, it is unavailing. Dr. Devore's treatment notes can be described, at best, as cursory. Other than very brief summaries of his observations and diagnoses, and of Plaintiff's reports, there is very little, if anything provided in the way of clinical findings such as diagnostic tests, imaging, or detailed examination notes. Although "[t]he Commissioner is required to give weight not only to the treating physician's clinical findings and interpretation of test results, but also to his subjective judgments," Lester, 81 F.3d at 832–33 (citation omitted), even a treating physician's opinion is "not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.2001).

Plaintiff argues that in Hill v. Astrue, 698 F. 3d 1153, 1160 (9th Cir. 2012), the court rejected this argument. However, in Hill, the court found that the ALJ there "failed to provide [the examining physician's] statement *any* degree of review at all, and gave no reasons for doing so, let alone any clear and convincing reasons. Id. (emphasis in the original). Here, the ALJ thoroughly reviewed Dr. Devore's treatment records as well as the treatment records of Plaintiff's other medical providers and gave reasons for giving Dr. Devore's opinion little weight. While other reasons cited by the ALJ for rejecting Dr. Devore's opinion were inadequate, her reasoning that Dr. Devore's statement was conclusory and unsupported by objective findings is sufficiently specific and legitimate and supported by evidence in the record.

### III. Lay Witness Evidence

Taffi Chappelle, Plaintiff's daughter, completed a Third-Party Function Report in October of 2007. She reported that Plaintiff was able to attend to her personal needs and to household chores, although such activities took her longer to complete. She described Plaintiff's day as including making breakfast; cleaning the kitchen; watching television or pursuing other hobbies such as puzzles, crosswords and card games; dozing in her chair and going to appointments. She noted that Plaintiff slept in a recliner, went outside daily and shopped weekly for groceries and household items. She wrote that Plaintiff had days when she was too tired to do any chores and that she had difficulty with, among other things, squatting, standing, reaching, walking sitting, completing tasks and using her hands. Chappelle reported that Plaintiff had "no problems" with paying attention and could follow written and spoken instructions "well."

Chappelle also wrote a letter prior to Plaintiff's second hearing in 2012. In it she indicated that Plaintiff was unable to bathe, cook or clean without hindrances; that her obesity had not become an "issue" until she developed problems with her leg; that her right shoulder was limited in its range of motion, which limited her ability to reach; and that she could not focus and pay attention when she was elevating her legs. Chappelle described Plaintiff as essentially bed bound during a period of time when her leg wounds required dressing changes and antibiotics.[1] According to Chappelle, this extended period of inactivity led to Plaintiff's deconditioning which required her to rest more and perform tasks more slowly.

The ALJ gave Chappelle's statements "little weight." She noted that in 2007, Chappelle described her mother as able to perform a number of activities of daily living but found Chappelle's "attempt to undermine her own statement two years after the fact to be less than

---

[1] Plaintiff's description of this period corresponds with treatment notes from Dr. Devore dated in 2001 during which he treated Plaintiff for cellulitis with edema, erythema, and lesions.

persuasive." The ALJ found that Chappelle's 2007 description of Plaintiff's level of functioning was "much more consistent" with the evidence of record, that some of the limitations she described were the result of Plaintiff's deconditioning and that both Chappelle's statements were offered more than 12 months after the adjudicatory period. An ALJ need only provide reasons that are "germane" for discounting the statements of third party witnesses. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1218 (9th Cir.2005). The ALJ satisfied that requirement here and I find no error.

## IV. **Ability to Perform Past Relevant Work**

Plaintiff argues that proper crediting of Dr. Devore's opinion and of her testimony that she must elevate her leg periodically throughout the day and can only sit for about two hours without elevating her leg, compels a finding of disability.

Because I have concluded that there was no harmful error with respect to the ALJ's evaluation of Dr. Devore's opinion or Plaintiff's credibility, I also conclude that Plaintiff's challenge to the ALJ's determination that Plaintiff was capable of performing her past relevant work is without merit. An ALJ is not required to incorporate evidence from medical opinions or plaintiff testimony that was properly discounted. <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1197 (9th Cir. 2004).

## **Conclusion**

For the reasons set out above, the Commissioner's decision should be AFFIRMED and this action should be DISMISSED with prejudice.

## **Scheduling Order**

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due October 13, 2015. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 24th day of September, 2015.

        /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge